J-S04006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EFRAIN GONZALEZ-PADILLA, | |
| Appellant | No. 744 MDA 2014 |

Appeal from the PCRA Order April 3, 2014
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001755-2011

BEFORE:  BOWES, ALLEN, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:              **FILED JANUARY 28, 2015**

Efrain Gonzalez-Padilla appeals from the April 3, 2014 order denying him PCRA relief.  We affirm.

On August 8, 2012, Appellant was found guilty of possession of a controlled substance with intent to deliver.  We summarize the facts underlying Appellant's conviction of the offense in question.  At approximately 11:30 p.m. on November 1, 2011, Sergeant Brett Hopkins, Detective Ryan Mong, and Detective Adam Saul, all of whom were assigned to the Lebanon County Drug Task Force, were conducting an undercover investigation of the 9th and Mifflin Street area in Lebanon City.  The

---

[*]  Retired Senior Judge assigned to the Superior Court.

operation was initiated in response to complaints about open-air drug dealing.

Sergeant Hopkins was in plain clothes and was standing on the corner of 9th and Mifflin Streets, which were lit by streetlights, when Appellant nodded at him. Detectives Mong and Saul were observing the interaction from a vehicle. Sergeant Hopkins approached Appellant and said that he wanted to purchase $50 worth of cocaine. He handed Appellant pre-recorded currency consisting of two twenty-dollar bills and two five-dollar bills.

Appellant crossed the street, spoke with a group of men, returned to Sergeant Hopkins, and told him that he would have to wait for the cocaine. After about one-half hour, Appellant motioned for the officer to follow him onto Partridge Street, a dark alley. After arriving in a secluded area, Appellant handed Sergeant Hopkins a knotted plastic bag containing what appeared to be crack cocaine. A chemical field test of the substance confirmed that the substance was cocaine.

After the transaction, Appellant left the alley. Sergeant Hopkins radioed the other detectives to arrest Appellant and provided a description. Appellant was apprehended by Detectives Mong and Saul immediately thereafter. At the scene, Sergeant Hopkins identified Appellant as the male who sold him the crack cocaine. Police testified that they recovered two five-dollar bills from Appellant, and the bills matched the serial numbers of the two five-dollar bills used as the buy money by Sergeant Hopkins.

After his conviction, Appellant was sentenced on September 26, 2012, to two to four years imprisonment. Appellant did not file a direct appeal, but he did file a timely PCRA petition. Counsel was appointed, and after a hearing, relief was denied. Appellant presents these issues on appeal from the denial of PCRA relief.

> A. Whether trial counsel was ineffective for failing to file a direct appeal as requested by defendant?
>
> B. Whether trial counsel was ineffective for failing to cross-examine the police officer regarding the denomination of currency found on defendant's person at the of arrest where [the] testimony differed from [the police] report?

Appellant's brief at 4.

Initially, we outline the applicable principles regarding our review of the PCRA court's determinations herein:

> An appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

*Commonwealth v. Freeland*, 2014 WL 6982658, 4 (Pa.Super. 2014) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding" for purposes of appellate review. *Commonwealth v. Watkins*, 2014 WL 7392224, 3 (Pa. 2014). Additionally,

> To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or

inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner. *See **Strickland v. Washington***, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); ***Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973 (1987).

***Freeland supra*** 2014 WL 6982658 at 4.

Appellant initially argues that he should have been afforded PCRA relief in the form of an appeal *nunc pro tunc* since "Defendant expressly requested Trial Counsel to file an appeal on his behalf. However, Trial Counsel failed to do so." Appellant's brief at 7. We observe that counsel is deemed ineffective *per se* if counsel fails to file an appeal requested by a defendant, and, in such circumstance, a defendant is automatically entitled to reinstatement of his appellate rights. ***Commonwealth v. Lantzy***, 736 A.2d 564 (Pa. 1999).

The PCRA court, however, expressly rejected Appellant's testimony at the PCRA hearing that he asked trial counsel to file a direct appeal. The PCRA court concluded that trial counsel credibly testified that Appellant did not ask him to file an appeal. The PCRA court noted that trial counsel stated at the PCRA hearing that he had a specific recollection of discussing the matter with Appellant after Appellant expressed unhappiness at sentencing. Counsel told Appellant that the jury verdict was unassailable and that the sentence was the only viable issue to appeal. Appellant then responded that he did not want to appeal his two-year sentence.

Counsel also testified that after he received Appellant's sentencing order, he sent Appellant a copy of it with a cover letter, written in Spanish, which explained Appellant's appellate rights. Although Appellant stated at

the PCRA hearing that he sent a letter to counsel asking for an appeal, counsel testified that he never received a letter from Appellant requesting a direct appeal. Counsel further testified that, if he had received such a letter from Appellant, he would have filed an appeal. The trial court specifically found trial counsel's testimony to be credible. Trial Court Opinion, 6/17/14, at 9.

The record supports the trial court's decision to credit trial counsel's testimony that Appellant did not request a direct appeal instead of Appellant's contrary testimony. That credibility determination therefore is binding on this Court. In light of this credibility determination, we must conclude that an appeal was not requested and that the PCRA court correctly denied reinstatement of Appellant's direct appeal rights. ***Commonwealth v. Markowitz***, 32 A.3d 706 (Pa.Super. 2011).

Appellant's second contention is that his trial counsel rendered ineffective assistance in failing to explore the fact that there was an inconsistency between the trial testimony, wherein police indicated that they recovered the two pre-recorded five-dollar bills from Appellant at the time of his arrest, and the police report, which stated that a ten-dollar bill was found on Appellant. As noted by the PCRA court, trial counsel was aware of this discrepancy. The assistant district attorney had informed trial counsel that the reference to a $10.00 bill in the police report was a typographical error, and that the officers actually recovered the two five-dollar bills that were

entered into evidence as exhibits. After consideration of the facts, argument, and applicable law, we affirm the denial of PCRA relief as to this allegation based upon pages nine through twelve of the trial court opinion authored on June 17, 2014 by the Honorable Bradford H. Charles.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/2015

ENTERED IN THE COURT OF COMMON PLEAS LEBANON COUNTY
PENNSYLVANIA

2014 JUN 18 P 3: 04

CRIMINAL DIVISION

CLERK OF COURT
LEBANON, PA

COMMONWEALTH OF
PENNSYLVANIA                          :
                                      :
                                      :        NO. CP-38-CR-1755-2011
         v.                           :
                                      :
EFRAIN GONZALEZ-PADILLA               :
                                      :

**APPEARANCES**

Nichole Eisenhart, Esquire          For Commonwealth of Pennsylvania
DISTRICT ATTORNEY'S OFFICE

Erin Zimmerer, Esquire              For Efrain Gonzalez-Padilla
MONTGOMERY & ZIMMERER

**OPINION BY CHARLES, J., June 17, 2014**

Efrain Gonzalez-Padilla (hereafter "DEFENDANT") filed a Petition for Post-Conviction Relief (PCRA) on September 13, 2013, alleging ineffective assistance of counsel at his jury trial held on August 8, 2012. After hearing testimony from DEFENDANT, his trial counsel, and the arresting officers, we concluded that DEFENDANT's arguments simply had no merit. We therefore denied his Petition on April 3, 2014. For the reasons that follow, we affirm our decision to deny DEFENDANT's PCRA Petition.

1

## I.    FACTS

On November 1, 2011 around 11:30 p.m., Sergeant Brett Hopkins, Detective Ryan Mong, and Detective Adam Saul of the Lebanon County Drug Task Force were conducting an undercover investigation of the 9th and Mifflin Street area in Lebanon City in response to complaints about open air drug dealing. (8/8/2012 N.T. 17). Sgt. Hopkins was standing on the northwest corner of 9th and Mifflin Streets across from the Liberty Bar in civilian clothes when DEFENDANT nodded to him from across the street. (8/8/2012 N.T. 17). Det. Mong and Det. Saul remained in the vehicle as surveillance officers. Sgt. Hopkins crossed the street and told DEFENDANT that he was looking for $50.00 worth of "hard". (8/8/2012 N.T. 17). DEFENDANT asked in broken English, "rock?" (8/8/2012 N.T. 17-18). Sgt. Hopkins replied, "Yes," and DEFENDANT requested money. (8/8/2012 N.T. 18-19).

Sgt. Hopkins explained at trial that the officers typically photocopy and pre-record the serial numbers of each of the bills they intend to use for their undercover purchases. They do so in the event that they are able to recover the buy money within a short period of time after the undercover sale so that they can link the sale to the defendant. (8/8/2012 N.T. 19). Exhibit 3 at trial identified the photograph of the $50.00 that Sgt. Hopkins possessed the night of November 1, 2011. This $50.00 consisted of two $20.00 bills and two $5.00 bills.

2

After Sgt. Hopkins gave DEFENDANT the pre-recorded buy money, DEFENDANT crossed the street and began speaking with a group of men. (8/8/2012 N.T. 21). He returned fifteen minutes later and informed Sgt. Hopkins that he would have to wait another 20 minutes. (8/8/2012 N.T. 21). When he returned, he motioned for Sgt. Hopkins to follow him west on Mifflin Street to Partridge Street – a nearby dark alley. (8/8/2012 N.T. 21-22). After traveling south on Partridge Street, DEFENDANT handed Sgt. Hopkins a knotted plastic bag containing what Sgt. Hopkins suspected to be crack cocaine. (8/8/2012 N.T. 22). DEFENDANT tore open the bag and sprinkled the substance into Sgt. Hopkins' hand. (8/8/2012 N.T. 22). A chemical field test of the substance confirmed the presence of cocaine.

A local bar is located at the 9th and Mifflin Street intersection, and there were several people walking around in the area. (8/8/2012 N.T. 26). However, there are several streetlights in front of the bar, and Sgt. Hopkins explained at trial that the lighting at the corner of 9th and Mifflin Streets was very good at the time he was interacting with DEFENDANT. (8/8/2012 N.T. 25). He explained that he was able to observe and talk to DEFENDANT for at least a half an hour. (8/8/2012 N.T. 25). Det. Mong explained that he was unable to identify DEFENDANT from his surveillance position while he was interacting with Sgt. Hopkins, but he was able to get a general idea of his clothing and build. (8/8/2012 N.T. 30-31, 37).

3

After DEFENDANT provided Sgt. Hopkins with the cocaine, DEFENDANT traveled south on Partridge Street and turned left onto Monument Street back towards 9th Street. (8/8/2012 N.T. 24). Sgt. Hopkins immediately contacted the surveillance officers to describe DEFENDANT and his location. (8/8/2012 N.T. 24, 36). Det. Mong and Det. Saul were positioned in an area where they could observe DEFENDANT exit Monument Street onto 9th Street. (8/8/2012 N.T. 31). After the surveillance unit apprehended DEFENDANT and took him into custody, Sgt. Hopkins identified him as the same man who sold him cocaine on Partridge Street. (8/8/2012 N.T. 18, 25). Similarly, Det. Mong identified the man he took into custody as the same individual who he saw walk down Mifflin Street with Sgt. Hopkins and then return into his field of view from Monument Street. (8/8/2012 N.T. 37-38). Det. Mong testified that he did not see any other individuals in that area at the time DEFENDANT emerged from Monument Street. (8/8/2012 N.T. 38). He explained that there was no possibility that he arrested any of the other individuals on the street corner by mistake. (8/8/2012 N.T. 38).

After the officers arrested DEFENDANT, they transported him to Central Booking and searched him. (8/8/2012 N.T. 33). The officers recovered two $5.00 bills from DEFENDANT. These bills matched the serial numbers of the pre-recorded money that Sgt. Hopkins used to purchase the cocaine. (8/8/2012 N.T. 34). The police report mistakenly

4

states that the officers recovered a $10.00 bill from DEFENDANT. Prior to Trial, Assistant District Attorney Nichole Eisenhart spoke with DEFENDANT's trial counsel, Attorney John Gragson (hereafter "TRIAL COUNSEL"). She explained to him that the reference to a $10.00 bill in the police report was a typographical error, and that the officers actually recovered the two $5.00 bills entered as Exhibit 3. (4/3/2014 N.T. 15).

As a result of the above episode, DEFENDANT was charged with one count of Delivery of a Controlled Substance and one count of Possession of Drug Paraphernalia. On August 8, 2012, a jury found DEFENDANT guilty of Delivery of a Controlled Substance and not guilty of Possession of Drug Paraphernalia. We imposed a sentence of 2-4 years on DEFENDANT. At sentencing, when asked if he had anything to say, DEFENDANT responded with; [t]hat I am remorseful. That I am guilty." (8/8/2012 N.T. 3). DEFENDANT did not file an appeal.

On September 13, 2013, DEFENDANT filed a Petition for Post-Conviction Relief. After a Hearing on April 3, 2014, we concluded that DEFENDANT was not entitled to relief under the Post-Conviction Relief Act, and we denied his Petition. DEFENDANT appealed to the Superior Court on May 1, 2014. We author this Opinion pursuant to Pa.R.A.P. 1925 to address DEFENDANT's appeal.

## II. THE POST-CONVICTION RELIEF ACT

The Post-Conviction Relief Act (hereafter "PCRA") provides a process by which persons convicted of crimes they did not commit and

5

persons serving illegal sentences can obtain relief. 42 Pa.C.S.A. § 9542. The PCRA is the exclusive method by which collateral relief may be obtained in Pennsylvania. *Commonwealth v. Chester*, 733 A.2d 1242, 1250 (Pa. 1999). To be eligible for relief, a PCRA defendant must prove the following elements by a preponderance of evidence:

(1) That he has been convicted of a crime under the laws of this Commonwealth and that he is serving a sentence for that crime;

(2) That the conviction resulted from one of the enumerated errors listed in § 9543(a)(2) of the PCRA;

(3) That the allegation of error has not previously been litigated or waived; and

(4) That any failure to litigate the issue previously was not the result of a rational, strategic, or tactical decision by the Defendant or his counsel.

See 42 Pa.C.S.A. § 9543.

When a claim of ineffective assistance of counsel is raised, additional principles apply. Trial counsel is presumed to be effective, and the Defendant bears the burden of proving otherwise. *Commonwealth v. Lewis*, 708 A.2d 497, 500 (Pa.Super. 1998); *Commonwealth v. Williams*, 570 A.2d 75, 81 (Pa. 1990). In determining whether counsel rendered ineffective assistance, the Court must first determine whether the issue underlying the claim of ineffectiveness has even arguable merit. *Commonwealth v. DiNicola*, 751 A.2d 197, 198 (Pa.Super. 2000);

6

*Commonwealth v. Johnson*, 588 A.2d 1303, 1305 (Pa. 1991). If the claim is without arguable merit, the Court's inquiry ends, as counsel will not be deemed ineffective for failing to pursue a meritless issue. *Id.* Even if the underlying claim is of arguable merit, the Defendant must establish that the course of action chosen by counsel had no reasonable basis designed to effectuate the Defendant's interest. *Id.* In addition, the Defendant must also establish that but for counsel's deficient performance, the result of the trial would have been different. *Id.*

## III. DISCUSSION

DEFENDANT's PCRA Petition sets forth two allegations of ineffective assistance of counsel. DEFENDANT first argues that TRIAL COUNSEL was ineffective for failing to file a direct appeal upon DEFENDANT's request. DEFENDANT also argues that TRIAL COUNSEL was ineffective for failing to properly cross examine and object to testimony regarding the officer's buy money. More specifically, DEFENDANT stresses that the police recovered a $10.00 bill from him, but the officer's buy money consisted of two $5.00 bills. After review of the record, we conclude that DEFENDANT's arguments have no merit.

### A. Failure to File a Direct Appeal

At his PCRA Hearing, DEFENDANT explained that he wrote a letter to TRIAL COUNSEL asking him to file a direct appeal. (4/3/2014 N.T. 6-7; Exhibit 1). He also explains that he spoke to TRIAL COUNSEL two

7

weeks prior to his trial about his interest in filing a direct appeal. (4/3/2014 N.T. 7). He therefore argues that because TRIAL COUNSEL failed to file his appeal, he received ineffective assistance of counsel.

TRIAL COUNSEL testified that he remembered DEFENDANT discussing his Post-Sentence Motions and his desire to file an appeal prior to trial. (4/3/2014 N.T. 11-12). However, he also remembered speaking to DEFENDANT the day of trial. When DEFENDANT indicated that he was dissatisfied with the verdict, TRIAL COUNSEL explained to him that he could not then appeal the jury verdict; he could only appeal the sentence. At that point, he asked DEFENDANT if he wanted to appeal. DEFENDANT indicated that he did not wish to appeal, and that he would accept the two year minimum sentence. (4/3/2014 N.T. 13-14).

TRIAL COUNSEL also testified that when he received DEFENDANT's sentencing Order in the mail, he furnished it to DEFENDANT along with a letter written in Spanish indicating that he had 10 days to file a Rule 720 Motion and 30 days to appeal. (4/3/2014 N.T. 11-12;. Exhibit 2). TRIAL COUNSEL explained that he never received a letter back from DEFENDANT, and had he received such a letter, he would have taken action. (4/3/2014 N.T. 13).

We find the testimony of TRIAL COUNSEL to be credible. It is evident that TRIAL COUNSEL and DEFENDANT discussed the issue of an appeal on several occasions. TRIAL COUNSEL was clearly aware that DEFENDANT was considering filing an appeal. However,

8

DEFENDANT gave conflicting information regarding his desire to appeal. In part because of this conflicting information, TRIAL COUNSEL wrote and sent a letter to DEFENDANT advising him of his appeal options. DEFENDANT never responded. All of the above suggests that TRIAL COUNSEL was ready and willing to file an appeal on DEFENDANT's behalf at his request.

We conclude that TRIAL COUNSEL never received instructions from DEFENDANT to appeal at or following his sentencing hearing. We find TRIAL COUNSEL's testimony on the appeal issue to be credible. We reject the credibility of DEFENDANT's claim that he mailed a letter instructing TRIAL COUNSEL to appeal. Accordingly, DEFENDANT's first PCRA issue will be denied.

### B. Failure to Properly Cross Examine and Object to Buy Money

DEFENDANT argues that the he was not carrying two $5.00 bills at the time of his arrest, and that the officers instead recovered a $10.00 bill from him, as indicated in the police report. (4/3/2014 N.T. 8). He notes that the marked money used by Sgt. Hopkins consisted of two $20.00 bills and two $5.00 bills, and therefore the fact that the officers may have recovered a $10.00 bill from DEFENDANT is significant because it indicates that Sgt. Hopkins may not have given DEFENDANT the buy money as he testified. TRIAL COUNSEL did not object to Det. Mong's testimony that he recovered two $5.00 bills from DEFENDANT's person, nor did he cross examine the officers on the inconsistency

9

between the police report and Det. Mong's testimony. Because of this, DEFENDANT argues that he received ineffective assistance of counsel.

At the PCRA Hearing, TRIAL COUNSEL explained that he did not address the money denomination issue because he did not believe it had any merit. (4/3/2014 N.T. 14). He explained that Det. Mong testified that the officers recovered two $5.00 bills from DEFENDANT, and this testimony matched the exhibit that was produced of the recorded money. (4/3/2014 N.T.15). TRIAL COUNSEL explained that in his experience, cross examination of a minor discrepancy such as the reference to a $10.00 bill in the police report "does not mean much to the jury." (4/3/2014 N.T. 17). Therefore, given all of the evidence, he explained that the better defense was that of mistaken identity. (4/3/2014 N.T. 16).

While we find that TRIAL COUNSEL could have cross examined the police officers regarding the discrepancy, we conclude that such a line of questioning would have been pointless. We note that the detectives retained the money that was seized from DEFENDANT at the time of his arrest. The physical money seized remains in the detective's file today and a copy of the money seized from DEFENDANT at the time of his arrest was contained in the discovery packet that was turned over to defense counsel prior to trial. The file does not contain a $10.00 bill; it contains the two $5.00 bills with recorded serial numbers. Thus, physical evidence disclosed in discovery and available at trial supported

10

the Commonwealth's argument that recorded buy money was in the possession of DEFENDANT.

It is true that Det. Mong's police report erroneously referenced a $10.00 bill instead of two $5.00 bills. It is also true that TRIAL COUNSEL could have attempted to impeach Det. Mong with the error in his report. However, Det. Mong discovered the error prior to trial and communicated it to the District Attorney's Office. The prosecutor then notified DEFENDANT prior to trial that the report narrative was inaccurate. We are confident that under these circumstances, the jury would have understood that sometimes typographical errors are made and would have viewed counsel's efforts to focus on this issue as little more than "grasping at straws."

What is clear is that the money seized from DEFENDANT was retained as evidence. It was photocopied. The money was available for inspection by the jury. Making a big deal of the discrepancy in cash denominations would not have assisted DEFENDANT, and would have served only to reinforce for the jury the importance of the recorded buy money found in DEFENDANT's possession.

We do not find TRIAL COUNSEL to be ineffective for failing to cross examine police regarding the discrepancy between the $10.00 mentioned in the police report and the $5.00 bills that were retained as physical evidence and clearly documented as the buy money seized from DEFENDANT. Even assuming, arguendo, that TRIAL COUNSEL could

11

somehow have been deemed negligent for failing to extensively cross-examine police regarding the discrepancy in the report, we are confident that such a line of questioning would have had no impact whatsoever on the jury's verdict. Accordingly, DEFENDANT's second PCRA argument was properly denied.

### III. CONCLUSION

Neither of the PCRA issues presented by DEFENDANT have any merit whatsoever. Based largely upon our credibility finding in favor of TRIAL COUNSEL and against DEFENDANT, we conclude that DEFENDANT never asked TRIAL COUNSEL to appeal following his sentencing. Thus, TRIAL COUNSEL cannot be deemed ineffective for failing to file an appeal. With respect to cross-examination of police, we conclude that it would have been pointless for TRIAL COUNSEL to cross-examine police officers regarding a typographical error in the police report. This is especially true given that the actual funds seized from DEFENDANT were available for presentation at trial and were photocopied as evidence.

Based upon the foregoing, we reject all of DEFENDANT's PCRA issues. It is with this comment that we will forward the above-referenced file to the Pennsylvania Superior Court for its analysis.

12