J-S34022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERTO MONTALVO | |
| Appellant | No. 1652 MDA 2014 |

Appeal from the PCRA Order August 28, 2014
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001253-2011

BEFORE:  BOWES, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 09, 2015**

Roberto Montalvo appeals from the order entered on August 28, 2014, in the Court of Common Pleas of Lebanon County denying him relief on his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*.  In his underlying trial, Montalvo was convicted of a variety of crimes associated with the sexual assault of a minor as well as a variety of drug charges related to the police having discovered 51 grams of cocaine and 28 grams of marijuana hidden in Montalvo's apartment.  Montalvo received an aggregate sentence of ten years, three months to thirty-two years' incarceration.  In this timely appeal, Montalvo raises three issues,

none of which is meritorious.[1]  We affirm based upon the sound analysis of the PCRA court's 1925(a) opinion, dated November 4, 2014.

Our standard of review for this matter is well settled.

> This Court's standard of review regarding an order granting or denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Ragan**, 592 Pa. 217, 923 A.2d 1169, 1170 (2007). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa.Super.2001). "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Spotz**, 610 Pa. 17, 18 A.3d 244, 259 (2011).

**Com. v. Cristina**, 114 A.3d 419, 421 (Pa. Super. 2015)

The facts and procedural history of this matter are thoroughly recounted in the PCRA court's opinion, and do not need to be restated herein.[2]  Montalvo has raised three issues in this appeal.  They are:

> 1) Was trial counsel's failure to (A) interview proffered character witnesses and (B) eyewitnesses, (C) to [sic] seek to impeach the complainant, or (D) to [sic] file a pre-trial motion "ineffective assistance" such that the trial court erred in failing to make this finding?
>
> 2) Did the Court abuse its discretion in finding that the plea offer was properly communicated to [Montalvo]?
>
> 3) Was [Montalvo's] right to trial by jury compromised under these circumstances?

---

[1] Montalvo's first issue contained four subparts.

[2] Montalvo was denied relief in his direct appeal at **Commonwealth v. Montalvo**, 82 A.3d 467 (Pa. Super. 2013) (unpublished memorandum).

Montalvo's Brief at 5.

As noted above, the PCRA court has thoroughly addressed all the properly preserved claims in its Pa.R.A.P. 1925(a) opinion. We rely upon that analysis in denying Montalvo relief.

We write separately to note that two of the four sub-issues raised in this appeal were not in the amended PCRA petition filed by counsel nor were they argued before the PCRA court at the August 28, 2014 PCRA hearing. The two issues are 1(B) and (D), as listed in the Appellant's Brief, **supra**. Because neither claim was presented to or developed before the PCRA court, they have been waived.[3] **See Commonwealth v. Knox**, 105 A.3d 1194, 1199 (Pa. 2014) (Issues not raised before the lower court are waived and cannot be raised for the time on appeal.)

The parties are directed to attach a copy of the PCRA court's November 4, 2014 Pa.R.A.P. 1925(a) opinion in the event of further proceedings.

_____

[3] At the beginning of the PCRA hearing, Judge Bradford H. Charles asked counsel to identify all the issues Montalvo wished to pursue. **See** N.T. PCRA Hearing, 8/28/2014, at 4. As noted, these issues were not identified or argued.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/9/2015

**IN THE COURT OF COMMON PLEAS LEBANON COUNTY**
**PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF
PENNSYLVANIA
:
:
: NO. CP-38-CR-1253-2011
v.
:
:
ROBERTO MONTALVO
:
:
:

**APPEARANCES**

Megan Ryland-Tanner, Esquire     For Commonwealth of Pennsylvania
DISTRICT ATTORNEY'S OFFICE

John Gragson, Esquire     For Roberto Montalvo

**OPINION BY CHARLES, J., November 4, 2014**

Roberto Montalvo (hereafter "DEFENDANT") filed a Petition for Post-Conviction Relief on June 13, 2014, after which we concluded that his averments were wholly meritless. When we denied DEFENDANT's Petition in an Order dated August 28, 2014, DEFENDANT appealed our decision. We author today's Opinion in support of our conclusion that DEFENDANT received effective assistance of counsel at his trial and throughout his proceedings, and is therefore not entitled to post-conviction relief.

A 1

## I.   FACTS

On September 13, 2011, DEFENDANT was charged with multiple sexual assault and drug charges stemming from incidents that occurred from June 18, 2011 to June 21, 2011.  On June 21, 2011, a 17-year old male (hereafter "A.T.") reported that he was sexually assaulted by a man he knew as Roberto.  He identified Roberto as DEFENDANT.

A.T. reported that he knew DEFENDANT for approximately three or four months.  He stated that he went to DEFENDANT's house on either June 18 or June 19 of 2011, and stayed with him until June 21, 2011.  He reported that during the overnight hours of June 20, 2011 into June 21, 2011, DEFENDANT supplied him with beer and cocaine.  He claimed that he consumed approximately 12 beers and used cocaine with DEFENDANT.

A.T. stated that while he was under the influence of alcohol and drugs, DEFENDANT grabbed him and removed his clothing.  He reported that DEFENDANT licked his genitals and anal area, inserted A.T.'s penis into his mouth, and inserted his penis into A.T.'s anus and mouth.  DEFENDANT also directed A.T. to touch his penis with his hand.  He told DEFENDANT that he did not want to do these acts, but DEFENDANT told him to put a pillow over his face and "pretend he was with a woman."

A.T.'s parents transported him to the Good Samaritan Hospital, where he was inspected by SAFE Nurse Vanessa Smith.  The nurse observed tears to A.T's anus.  She performed a rape kit examination

A 2

(Exh. 28), which indicated the presence of semen in A.T.'s anus. The parties stipulated that the DNA profile rendered from the rape kit test reflected a mixture of DNA "made up of [A.T.] and Roberto Montalvo." N.T. p. 65. The stipulation further set forth that the probability of randomly selecting an unrelated individual other than DEFENDANT who possessed the DNA type he examined was "approximately 1 in 61 quintillion from the Caucasian population; approximately 1 in 3.3 sextillion from the African American population; and 1 in 27 quintillion from the Hispanic population." N.T. p. 65; Exh. 3.

Officers with the Lebanon City Police Department were called to the hospital in order to interview A.T. As a result of the interview, a search warrant was obtained for DEFENDANT's residence, located at 1421 Willow Street, Apt. 3, Lebanon, PA 17046. The purpose of the search warrant was to look for evidence related to the sexual assault described by A.T.

The search was conducted by Detective Keith Ulrich and Detective Jonathan Hess on June 21, 2011. In the residence, the officers encountered DEFENDANT and an individual by the name of Miguel Lopez. During the search, the police located what appeared to be cocaine, crack-cocaine, marijuana, and drug paraphernalia. Most of the drugs were found hidden in the ceiling of the apartment. Additionally, small street delivery-sized baggies were found in the apartment, as well as a digital scale. Ultimately, 51 grams of cocaine were located within

A 3

DEFENDANT's apartment, with an estimated value between $4,100.00 and $5,000.00. Officers also retrieved 28 grams of marijuana behind a ceiling tile.

Attorney Elizabeth Judd (hereafter "TRIAL COUNSEL") of the Lebanon County Public Defender's Office was appointed to represent DEFENDANT at his trial. His trial was conducted on February 9 and 10 of 2012, after which a jury rendered the following verdicts:

| Count | Offense | Verdict |
|-------|---------|---------|
| 1 | Sexual Assault | Guilty |
| 2 | Sexual Assault | Guilty |
| 3 | Possession with Intent to Deliver Cocaine – In Excess of 10 Grams | Guilty |
| 4 | Conspiracy to Commit Possession with Intent to Deliver Cocaine – In Excess of 10 Grams | Guilty |
| 5 | Possession with Intent to Deliver Marijuana | Not Guilty |
| 6 | Conspiracy to Commit Possession with Intent to Deliver Marijuana | Not Guilty |
| 7 | Indecent Assault | Guilty |
| 8 | Corruption of Minors | Guilty |
| 9 | Possession of Cocaine | Guilty |
| 10 | Conspiracy to Possess Cocaine | Guilty |
| 11 | Possession of Marijuana | Guilty |
| 12 | Conspiracy to Possess Marijuana | Guilty |
| 13 | Possession of Drug Paraphernalia | Guilty |

A 4

| 14 | Conspiracy to Commit Possession of Drug Paraphernalia | Not Guilty |
|---|---|---|
| 15 | Furnishing Alcohol to Minor | Guilty |

On March 27, 2012, this Court granted TRIAL COUNSEL's Motion for Appointment of Conflict Counsel, and we appointed Attorney John Ferry to represent DEFENDANT at his sentencing. On May 2, 2012, we sentenced DEFENDANT to an aggregate sentence of 10 years 3 months to 32 years in prison. Conflict counsel for DEFENDANT filed Post-Sentence Motions on May 14, 2012. That same day, DEFENDANT filed a *pro se* petition with this Court, requesting an extension of time to file his Post-Sentence Motions. Noting that his attorney already filed these Motions, we denied DEFENDANT's request. We ultimately denied DEFENDANT's Post-Sentence Motions in an Order dated October 15, 2012. DEFENDANT appealed to the Superior Court on November 9, 2012, and the Superior Court affirmed our judgment of sentence on June 21, 2013.

On April 10, 2014, DEFENDANT filed a Petition for Post-Conviction Relief, alleging ineffective assistance of counsel. He claimed that TRIAL COUNSEL:

(1)   Did not meet with DEFENDANT and did not fully discuss his case with him;

(2)   Did not advise him of a plea offer and discuss said offer with him;

A 5

(3)     Denied him the use of an interpreter;

(4)     Denied him the right to help pick a jury in his case;

(5)     Failed to impeach the victim with his prior criminal record; and

(6)     Refused to call the following witnesses, who were present at trial and willing to be called as character witnesses:

(a)     Ms. Ana Cruz

(b)     Ms. Edme Alvarado

After Hearing, this Court concluded that DEFENDANT's averments were meritless, and we issued an Order on August 28, 2014 denying his Petition. DEFENDANT filed this appeal on September 29, 2014.

## II.     THE POST-CONVICTION RELIEF ACT

The Post-Conviction Relief Act (PCRA) provides for an action by which innocent persons convicted of crimes that they did not commit and persons serving illegal sentences can obtain relief. 42 Pa.C.S. § 9542. The PCRA is the exclusive method by which collateral relief may be obtained in Pennsylvania. *Commonwealth v. Chester*, 733 A.2d 1242, 1250 (Pa. 1999). To be eligible for relief under the PCRA, a defendant must prove the following elements by a preponderance of the evidence: (1) He must prove that he has been convicted of a crime under the laws of this Commonwealth and that he is serving a sentence of imprisonment, probation or parole for a crime; (2) he must prove that the conviction resulted from one of the enumerated errors listed in § 9543(a)(2); (3) he must prove that the allegation of error has not been previously litigated or

A 6

waived; and (4) he must prove that the failure to litigate the issue prior to or during trial could not have been the result of any rational, strategic or tactical decision by counsel. 42 Pa.C.S. § 9543(a).

When a claim of ineffective assistance of counsel is raised, additional principles apply. Trial counsel is presumed to be effective, and the Defendant bears the burden of proving otherwise. *Commonwealth v. Lewis*, 708 A.2d 497 (Pa.Super. 1998); *Commonwealth v. Williams*, 570 A.2d 75 (Pa. 1990). In order for a petitioner to establish a claim of ineffectiveness of counsel, he must satisfy a three prong test set forth by the Pennsylvania Supreme Court in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). The Defendant must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel's particular course of conduct did not have some reasonable basis designed to effectuate the petitioner's interests; and (3) but for counsel's ineffectiveness, a reasonable probability exists that the outcome of the proceeding would have been different. *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). If the claim is without arguable merit, the Court's inquiry ends, because counsel cannot be deemed ineffective for failing to pursue a meritless issue. *Commonwealth v. DiNicola*, 751 A.2d 197, 198 (Pa.Super. 2000).

## III.  DISCUSSION

We note at the outset that shortly after his first meeting with TRIAL COUNSEL, DEFENDANT began petitioning this Court without TRIAL COUNSEL's knowledge. On August 26, 2011, DEFENDANT signed a

Waiver of Preliminary Hearing. Despite this waiver, DEFENDANT filed a *pro se* Motion on September 15, 2011, which he self-titled "Appeal of Imposed Waiver of Preliminary Hearing." Therein, he complained about TRIAL COUNSEL and lamented that she "took unwarranted advantage of [DEFENDANT's] inability to speak, read, and understand the English language". DEFENDANT remained difficult throughout the proceedings, and it therefore comes as no surprise to us that he files this meritless appeal today by which he blames his conviction on TRIAL COUNSEL.

## A. TRIAL COUNSEL did not meet with DEFENDANT and fully discuss the case with him.

DEFENDANT initially argues that TRIAL COUNSEL "never met with him," and that she did not fully discuss his case with him so that he could be fully informed of his circumstances and options. After review of the documentation and in light of the Hearing testimony, we conclude that this averment is meritless.

At his Hearing, DEFENDANT testified that he met with his lawyer twice in prison, and discussed the case with her one time before trial. He claimed that TRIAL COUNSEL "never met with me." However, DEFENDANT later testified that he met with TRIAL COUNSEL on December 20. They discussed what he knew about the victim, other witnesses, and the plea bargain. On cross examination, he explained that he met with TRIAL COUNSEL "two times." He testified that the first

A 8

meeting lasted approximately 15 minutes, and the second meeting lasted approximate 5-10 minutes.

TRIAL COUNSEL referenced her notes and scheduling record, and explained that she met with DEFENDANT four times before trial. The scheduling record indicates that she first met with DEFENDANT on July 18, 2011, at which time he requested that bail be reduced. When TRIAL COUNSEL met with DEFENDANT on November 20, 2011, she discussed the plea offer with DEFENDANT. At their December 20, 2011 meeting, DEFENDANT and TRIAL COUNSEL discussed the trial strategy. TRIAL COUNSEL first mailed DEFENDANT a copy of his discovery on October 13, 2011, and later mailed DEFENDANT a letter on December 27, 2011 with supplemental discovery.

While DEFENDANT's testimony was unclear with respect to how many times he and TRIAL COUNSEL met and discussed his case, TRIAL COUNSEL based her testimony on scheduling records and correspondence, which indicate that she met with DEFENDANT four times and discussed the pertinent matters of his case. We find TRIAL COUNSEL's chronology of events to be credible. We therefore conclude that TRIAL COUNSEL allotted adequate time to discuss the case with DEFENDANT and prepare DEFENDANT's case for trial. DEFENDANT's statements to the contrary are simply not supported by the record.

**B.** **TRIAL COUNSEL did not advise DEFENDANT of a plea offer and discuss said offer with him.**

DEFENDANT claims that TRIAL COUNSEL did not advise DEFENDANT of the possibility of a plea agreement. DEFENDANT was ultimately sentenced to 10 years and 3 months to 32 years in prison. DEFENDANT claims that he did not realize that there was a plea offer available to him, pursuant to which he would serve 8 to 20 years in prison in lieu of taking the matter to trial. He argues that TRIAL COUNSEL did not inform him of this agreement, and that she should have explained all possibilities and circumstances to him so he could make an informed decision of whether he wanted to take his case to trial or plead.

TRIAL COUNSEL tells a different story. According to TRIAL COUNSEL, DEFENDANT claimed that there was no sexual contact between the victim and him, and that he insisted on going to trial even after TRIAL COUNSEL explained the plea offer to him. After the DNA test indicated the presence of DEFENDANT's bodily fluids on the victim, TRIAL COUNSEL "explained at great length what this all meant." She explained the possibility of 10-20 years or more of prison if convicted, and she also described to him the possibility of 8-20 years of imprisonment pursuant to the plea agreement. Despite the DNA evidence, DEFENDANT insisted that he wanted to take the matter to trial.

DEFENDANT's filings and testimony repeatedly indicate that TRIAL COUNSEL "never communicated" the plea bargain to DEFENDANT. However, the exhibits and correspondence from TRIAL COUNSEL show that DEFENDANT was aware of the plea offer at least by January of 2012. TRIAL COUNSEL's testimony indicates that she explained the plea bargain to DEFENDANT as early as her initial meeting with DEFENDANT on July 18, 2011. DEFENDANT's averments conflict with the evidence before us, and we find that TRIAL COUNSEL's testimony to be credible.

Because we conclude that DEFENDANT was aware of the Commonwealth's plea offer at least by January of 2012, we determine as a fact that DEFENDANT chose to reject the Commonwealth's plea offer and proceed to trial. DEFENDANT's argument therefore has no merit.

### C. TRIAL COUNSEL denied DEFENDANT the use of an interpreter.

DEFENDANT argues that TRIAL COUNSEL denied him the use of an interpreter during his court proceedings. At the Hearing, DEFENDANT explained that an interpreter was not present at his initial meeting with TRIAL COUNSEL. However, he later testified that there was a translator present for his second meeting, and he further mentioned that his translator was present with him at trial.

We find that, other than the initial meeting at which DEFENDANT communicated with TRIAL COUNSEL in English, DEFENDANT was

11

afforded an interpreter for all of his meetings with TRIAL COUNSEL and at all subsequent court proceedings, including his trial. Exhibit E is instructive in support of this conclusion. On September 12, 2011, TRIAL COUNSEL wrote a two-page letter to DEFENDANT, explaining that she was "glad [DEFENDANT] clarified [his] understanding of the English language," and that she was "surprised" by this news because DEFENDANT had written to her twice in English and spoke to her for 15 minutes in English at the Preliminary Hearing. Additionally, he "applied for Public Defender Services using an English application when a Spanish application was made available to [him]." She explained that in the future, she would communicate with him through a translator.

Additionally, TRIAL COUNSEL testified that at her initial meeting with DEFENDANT, TRIAL COUNSEL was clearly under the impression that DEFENDANT spoke and understood English based on their conversation. However, in the interest of caution, TRIAL COUNSEL provided DEFENDANT with an interpreter through all subsequent proceedings at his request.

We conclude that TRIAL COUNSEL followed through with her statement and provided a translator for DEFENDANT. The testimony and exhibits all clearly reveal that DEFENDANT had a translator present through all proceedings except for his initial meeting with TRIAL COUNSEL, during which time TRIAL COUNSEL was under the justified impression that DEFENDANT spoke sufficient English. DEFENDANT

A 12

himself referred to his translator several times throughout his Hearing. To conclude that DEFENDANT was "denied the use of an interpreter" during his court proceedings would totally belie the record of this case. As such, we find that this allegation is meritless.

### D. TRIAL COUNSEL denied DEFENDANT the right to help pick a jury.

DEFENDANT argues that he was denied the right to help participate in selecting the jurors. He testified that TRIAL COUNSEL and his interpreter told him to "be quiet" during the voir dire process, and that some of the older Hispanic jurors could have helped him at his trial had they been selected.

TRIAL COUNSEL is a skilled attorney who has tried hundreds of criminal cases in Lebanon County on both the prosecutorial and defense sides. Accordingly, TRIAL COUNSEL has extensive experience in the voir dire process. TRIAL COUNSEL recalled that DEFENDANT was agitated and combative during the jury selection process, and that she had to ask him to calm down. She feared that his client's agitated demeanor likely would not have helped him choose a favorable jury. We cannot find TRIAL COUNSEL ineffective for telling DEFENDANT to essentially "shut up" during the voir dire process.

We conclude that DEFENDANT was agitated during jury selection. To the extent that he may not have actively participated in the voir dire process, that was his own fault and not the responsibility of TRIAL

A13

COUNSEL. At no time did TRIAL COUNSEL hinder or prevent DEFENDANT from having input into the jury selection process. Accordingly, we cannot find TRIAL COUNSEL ineffective on these grounds.

### E. TRIAL COUNSEL failed to impeach the victim with his prior criminal record.

DEFENDANT argues that TRIAL COUNSEL failed to impeach the victim by presenting his prior criminal record to the Court. DEFENDANT explains that the victim in this case was found in New York with a gun, and that this was never reported in New York. He also explained that the victim was guilty of a theft or robbery in Lebanon, and that the victim's neighbor caught him selling drugs on camera. He argues that this information would have impeached the credibility of the victim.

We note that at no point did DEFENDANT testify that he relayed this information to TRIAL COUNSEL. A criminal background check of the victim indicated no criminal history. TRIAL COUNSEL indicated that she was not aware of these supposed charges, and that had DEFENDANT mentioned them, it might have been "helpful." Both TRIAL COUNSEL and DEFENDANT testified that they discussed what DEFENDANT knew of the victim prior to trial, and TRIAL COUNSEL testified that DEFENDANT did not mention these potential charges against the victim. The mere fact that DEFENDANT may have been aware of past allegedly

bad acts committed by the victim does not create admissible impeachment evidence.

Even if TRIAL COUNSEL would have presented this Court with the victim's criminal record to impeach his credibility, we conclude that this would have had no bearing on the verdict. The DNA test indicated that DEFENDANT's DNA was present inside of the minor victim's anus. Additionally, pursuant to a valid search, police recovered large amounts of drugs and drug paraphernalia from DEFENDANT's home. We are confident that this strong evidence would have been sufficient for the jury to find DEFENDANT guilty even if the victim's prior bad acts would have been known and even if they would have been admissible.

We conclude that TRIAL COUNSEL gave DEFENDANT the opportunity to provide information on the victim's criminal background. DEFENDANT failed to do so, and this failure does not impugn TRIAL COUNSEL's preparation for trial. We further conclude that, even if DEFENDANT would have provided TRIAL COUNSEL with such information, it would have had no effect on the outcome of his trial. As such, we cannot conclude that TRIAL COUNSEL was ineffective on these grounds.

## F.    TRIAL COUNSEL refused to call character witnesses.

Finally, DEFENDANT argues that he tried to tell TRIAL COUNSEL the names of the potential character witnesses, but she would not allow him to do so. DEFENDANT explained in his filings and his testimony that

A 15

his character witnesses would have shown that DEFENDANT was not a sexual predator. Because TRIAL COUNSEL failed to call these witnesses, DEFENDANT argues that she provided him with ineffective assistance of counsel.

The character witnesses proffered by DEFENDANT would have merely communicated the self-serving opinion that DEFENDANT is not a sexual predator. Such testimony is not proper character evidence and would not have been admissible at trial (*see* Pa.R.E. 404, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait"). Additionally, we do not see how testimony suggesting that Miguel Lopez was only residing with DEFENDANT for a short time would have affected the outcome of DEFENDANT's case.

TRIAL COUNSEL stated that the information to which DEFENDANT's character witnesses would have testified was improper and they would not have been able to testify. It is for this reason that she did not exchange contact information with them. We believe that TRIAL COUNSEL came to the appropriate conclusion. Accordingly, we will not declare her to be ineffective.

## IV. CONCLUSION

Frankly, DEFENDANT must realize that it was his own actions that brought him into his prison cell today. In addition to everything outlined above, this Court cannot forget that DEFENDANT's DNA was found

A-16

within semen located on the body of the minor victim. DEFENDANT's current protestation that his conviction was the fault of TRIAL COUNSEL is both legally unsupportable and completely contrary to the mountain of evidence that was presented against him at trial. DEFENDANT must now take responsibility for his wrongdoings and stop blaming others for his current incarceration.

Having determined that DEFENDANT's allegations are meritless, we reject his arguments and conclude that his appeal should be denied. A Court Order will be entered on today's date to transmit DEFENDANT's file to the Superior Court for their review.

A17